## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

**OSMAN RASUL,**
709 Route 29 Apt. 44
Rock City Falls, NY 12863

        Plaintiff,

v.

**TOWN OF NISKAYUNA,**
One Niskayuna Circle
Niskayuna, NY 12309;

**JORDAN KOCHAN,**
2831 River Rd.
Schenectady, NY 12309;

**BRETT ROBINSON,**
9 Terrace Ct.
Ballston Lake, NY 12019;

**MATTHEW O'BRIEN,**
185 Van Rensselaer Blvd. Apt. 9-1B
Albany, NY 12204

**JOHN FAVATA,**
1052 Mary Ln.
Schenectady, NY 12306;

**CHRISTOPHER HENRY,**
201 Parkridge Dr.
Schenectady, NY 12309;

**JAMIE PUCCIONI,**
1309 Knox Cave Rd.
Delanson, NY 12053, and;

**ERIN CASSADY-DORIAN,**
1114 Ruffner Rd.
Schenectady, NY 12309

        Defendants.

**COMPLAINT
AND JURY DEMAND**

Civil Action No.: 1:25-cv-752 (AMN/DJS)

Plaintiff Osman Rasul ("Plaintiff"), by his attorneys, Rupp Pfalzgraf LLC, as and for his complaint against the above-named Defendants, alleges as follows:

## NATURE OF ACTION

1.    This is a civil rights action brought under 42 U.S.C. § 1983 to vindicate Plaintiff's rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution.

2.    Plaintiff, a 24-year-old Muslim man and graduate of Niskayuna High School, was subjected to a pattern of harassment and retaliation by Defendants after he engaged in constitutionally protected speech criticizing local government officials and seeking redress of grievances.

3.    Defendants initiated two separate baseless criminal prosecutions against Plaintiff in direct retaliation for his protected speech activities, including: (a) speaking at a public town board meeting to address concerns about police misconduct and landlord-tenant issues; and (b) allegedly leaving a voicemail (which Plaintiff denies) that explicitly stated legitimate concerns about town governance.

4.    Both prosecutions lacked probable cause, violated established legal standards, and were ultimately dismissed in Plaintiff's favor after causing substantial harm to his reputation, employment, and constitutional rights.

5.    Through this action, Plaintiff seeks: (1) compensatory damages for the harm caused by Defendants' unconstitutional actions; (2) punitive damages to deter future violations; (3) expungement of records related to his protected speech; (4) declaratory and injunctive relief; and (5) attorney's fees and costs.

## CONSTITUTIONAL AND STATUTORY FRAMEWORK

6.      The First Amendment to the United States Constitution guarantees the right to free speech, including the right to criticize public officials and petition the government for redress of grievances.

7.      The right to free speech includes sharp criticism of public officials and constitutional protections do not turn on the popularity, truth, or "social utility" of the stated ideas and beliefs. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 271 (1964).

8.      Mere disagreement with or discomfort about a person's speech is not sufficient justification for disciplinary action.

9.      Speech on matters of public concern receives the highest level of First Amendment protection, and government officials may not retaliate against citizens for exercising this fundamental right.

10.      The Fourth Amendment prohibits arrests and prosecutions without probable cause.

11.      Probable cause is required to prosecute a crime in New York State. *People v. Bigelow*, 66 N.Y.2d 417, 423 (1985).

12.      The actions taken against Plaintiff are inconsistent with these principles.


## JURISDICTION

13.      This action is brought under 42 U.S.C. §§ 1983 and 1988, and under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

14.      This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 1983.

## VENUE

15.    Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Northern District of New York because Defendants reside in this district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

16.    Plaintiff Osman Rasul is a resident of Saratoga County, New York, and at all relevant times resided in the Town of Niskayuna.

17.    Defendant Town of Niskayuna, through its executives, officers, agents, servants, employees, and/or their specialized units, promulgate, implement, review, and/or enforce, as policymakers, certain policies regarding the conduct and actions of law enforcement officers employed by the Town of Niskayuna.

18.    Defendant Jordan Kochan is the Chief of Police of the Niskayuna Police Department. At all relevant times, he acted under color of state law.

19.    Defendant Brett Robinson is a Patrolman with the Niskayuna Police Department who initiated the criminal contempt charge against Plaintiff. At all relevant times, he acted under color of state law.

20.    Defendant Matthew O'Brien is a Police Officer with the Niskayuna Police Department who participated in Plaintiff's arrest and detention. At all relevant times, he acted under color of state law.

21.    Defendant John Favata is a Police Officer with the Niskayuna Police Department who participated in Plaintiff's arrest and detention. At all relevant times, he acted under color of state law.

- 4 -

22.     Defendant Christopher Henry is a Sergeant with the Niskayuna Police Department who had supervisory knowledge of Plaintiff's complaints and the subsequent retaliation.  At all relevant times, he acted under color of state law.

23.     Defendant Jamie Puccioni was the Town Supervisor of Niskayuna during the relevant time period until her resignation in August 2024.  At all relevant times, she acted under color of state law.

24.     Defendant Erin Cassady-Dorian was the Confidential Secretary to the Town Supervisor of Niskayuna during the relevant time period.  At all relevant times, she acted under color of state law in processing complaints and communications with town officials.  Upon information and belief she now is the acting Town Supervisor for the Town of Niskayuna.

## FACTUAL ALLEGATIONS

### Background

25.     In June 2024, Plaintiff filed a civilian complaint against Officer David Powell of the Niskayuna Police Department, alleging misconduct and discriminatory treatment.

26.     While this complaint was under review, Officer Powell initiated a traffic stop of Plaintiff on June 21, 2024, despite being specifically instructed by Lieutenant Todd Frenyea that Powell should have no further contact with Plaintiff except in emergencies.

27.     During this traffic stop, Officer Powell made racially charged comments, falsely claiming that Plaintiff had requested "a white cop instead of a black cop."

### July 24, 2024 Town Board Meeting

28.     On July 24, 2024, Plaintiff attended a public town board meeting to address his concerns about Officer Powell's conduct and issues with his mother's landlord.

29.     When Plaintiff approached the podium to speak during the public comment period—a fundamental First Amendment right—Town Supervisor Puccioni immediately displayed hostility, avoiding eye contact, rolling her eyes, and exhibiting dismissive body language.

30.     While Plaintiff was speaking, Officer Derek Breslin positioned himself directly behind Plaintiff in an intimidating manner, as if ready to arrest him merely for exercising his right to speak at a public forum.

31.     After Plaintiff spoke about legitimate public concerns regarding police misconduct and housing issues, he remained for the entire meeting until 10:00 PM.

32.     Following the meeting, when Plaintiff attempted to speak further with Supervisor Puccioni, Officer Derek Breslin came and grabbed Plaintiff's arm after Plaintiff complained that Town Supervisor Puccioni's husband—Marcus Puccioni—had inappropriately touched him.

33.     Afterward, Chief Kochan became emotionally agitated, demanding that Plaintiff stop contacting town officials and falsely accusing him of trying to "throw an innocent cop under the bus."

34.     Rather than addressing Plaintiff's legitimate concerns, Chief Kochan suggested Plaintiff needed "mental health treatment."

*First Retaliatory Prosecution – August 16, 2024*

35.     On August 14, 2024, one day after Plaintiff attended another town meeting, Supervisor Puccioni announced her resignation due to public criticism over utility rate hikes and other governance issues.

36. On August 16, 2024, just two days after Puccioni's resignation announcement and in direct retaliation for Plaintiff's protected speech activities, Defendants arrested Plaintiff on fabricated charges of aggravated harassment in the second degree.

37. The arrest was based on an alleged voicemail ("the voicemail") left for Puccioni, claimed to be by Plaintiff, stating that he had some concerns that she may want to hear, and requesting communication with her.

38. Plaintiff denies ever leaving the voicemail for Puccioni, but Defendants Kochan, Cassady-Dorian, and Puccioni claim it is his voice.

39. Even assuming Plaintiff did leave this voicemail, Defendants charged Plaintiff under Penal Law § 240.30(2), which specifically requires that communications have no legitimate purpose.

40. The charge was further enhanced as a "hate crime," transforming what would have been a misdemeanor into a Class E felony.

41. Supporting depositions from Defendants Kochan, Cassady-Dorian, and Puccioni all acknowledge that the voicemail contained a stated legitimate purpose, contradicting the statutory elements of the crime charged.

42. Plaintiff was arrested, held overnight, and prosecuted until the charge was dismissed on February 27, 2025.

43. The Honorable Stephen F. Swinton, Jr., issued a protective order on August 17, 2024, a day after Plaintiff was arrested, ordering Plaintiff to refrain from communicating with Puccioni by email, telephone, mail, voicemail or other electronic means.

44. Following Plaintiff's arrest, on August 19, 2024, Defendants caused or facilitated defamatory news articles to be published in the Times Union and Schenectady

- 7 -

Gazette. These articles, published just three days after the arrest, falsely branded Plaintiff as having made a "racist rant" and committing a "hate crime," severely damaging his reputation and employment prospects.[1][2]

45.     The news coverage contributed to the Plaintiff's undeserved public humiliation.

*Second Retaliatory Prosecution – November 15, 2024*

46.     On November 15, 2024, Defendant Robinson, acting as administrator of a Facebook page, filed a criminal contempt charge against Plaintiff based on a Facebook "review" posted on the Niskayuna Police Union page.

47.     Plaintiff's Facebook post stated that Niskayuna has a "racist, hateful police department run by a racist, neo-Nazi police chief... who harassed and threatened me with arrest because I came to a town board meeting asking for help." The post also alleged that Chief Kochan made questionable hires with checkered backgrounds and stated Plaintiff's intention to sue the police department.

48.     This Facebook post was clearly protected speech that: (a) was posted on a public forum accessible to the general public; (b) did not tag, mention, or attempt to directly communicate with any protected person; (c) constituted legitimate commentary on matters of public concern regarding police conduct and government accountability; and (d) fell completely outside the scope of the August 17 protective order.

---

[1]     *See, e.g.,* Paul Nelson, *Man facing hate crime for racist rant against ex-supervisor now charged in connection with social media post,* TIMES UNION (Nov. 19, 2024) https://www.timesunion.com/news/article/osman-rasul-charged-niskayuna-racist-voicemail-19925678.php.

[2]     *See, e.g.,* Paul Nelson, *Second charge dismissed in Niskayuna free speech vs. hate crime case,* TIMES UNION (Mar. 3, 2025) https://www.timesunion.com/news/article/second-charge-dismissed-niskayuna-free-speech-vs-20199510.php.

- 8 -

49.     The protective order explicitly prohibited direct communication with Puccioni by email, telephone, mail, voicemail or other electronic means, but did not prohibit public commentary on government affairs, criticism of police conduct, or posting reviews on public social media pages of government-related organizations.

50.     Defendant Robinson's characterization of this protected speech as "intentional disobedience" to the protective order demonstrates the retaliatory nature of this second prosecution, filed to punish Plaintiff for continuing to exercise his First Amendment rights to criticize government officials and police conduct.

*Dismissal of Charges*

51.     On February 12, 2025, the criminal contempt charge against Plaintiff was dismissed.

52.     On February 27, 2025, the felony aggravated harassment charge against Plaintiff was dismissed.

53.     These dismissals confirm that both prosecutions lacked probable cause from their inception and were pursued solely to retaliate against Plaintiff's protected speech.

54.     As a direct result of Defendants' unconstitutional conduct, Plaintiff suffered severe harm including: (a) loss of employment on February 4, 2025; (b) legal fees to defend himself from the retaliatory charges filed against him; (c) reputational damage and loss of standing in the community; (d) emotional distress and mental anguish; and (e) chilling of his constitutional rights to criticize government officials.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**First Amendment Retaliation (August 16, 2024 Prosecution)**
**Under 42 U.S.C. § 1983**
**Against Defendants Kochan, Puccioni, and Cassady-Dorian**

55.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

56.     Plaintiff engaged in constitutionally protected speech by attending and speaking at the July 24, 2024, town board meeting, where he criticized police conduct and addressed matters of public concern.

57.     Defendants Kochan, Puccioni, and Cassady-Dorian were motivated by retaliatory animus against Plaintiff's protected speech activities when they initiated the August 16, 2024, prosecution.

58.     The temporal proximity between Plaintiff's protected speech and the initiation of criminal charges, combined with the lack of probable cause and the acknowledgment of legitimate communicative purpose in the alleged voicemail, establishes that the prosecution was retaliatory.

59.     Defendants' conduct would deter a person of ordinary firmness from exercising their First Amendment rights.

60.     The lack of probable cause was so apparent that no reasonable official could have believed that prosecuting Plaintiff for communications that admittedly contained legitimate purposes would be constitutional.

- 10 -

61.     As a direct and proximate result of this retaliatory prosecution, Plaintiff suffered damages including legal fees, emotional distress, reputational harm, and violation of his constitutional rights.

## SECOND CAUSE OF ACTION

### First Amendment Retaliation (November 15, 2024 Prosecution)
### Under 42 U.S.C. § 1983
### <u>Against Defendant Robinson and Supervisory Defendants</u>

62.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

63.     Plaintiff engaged in constitutionally protected speech by posting commentary on a public Facebook page regarding matters of public concern.

64.     Defendant Robinson, acting as administrator of the Facebook page and with supervisory approval or ratification from Defendants Kochan and Henry, initiated the November 15, 2024, criminal contempt prosecution in retaliation for Plaintiff's continued exercise of First Amendment rights to criticize police conduct and government officials.

65.     The Facebook "review" clearly fell outside the scope of the protective order, which prohibited direct communication with Puccioni but did not prohibit public commentary on government matters or posting reviews on public social media pages of government-related organizations.

66.     Robinson's characterization of protected political speech as "intentional disobedience" demonstrates the vindictive purpose behind this prosecution, which was designed to silence Plaintiff's ongoing criticism of police conduct rather than to enforce any legitimate court order.

- 11 -

67. As a direct and proximate result of this retaliatory prosecution, Plaintiff suffered additional damages including legal fees, continued emotional distress, and further chilling of his constitutional rights.

## THIRD CAUSE OF ACTION

### Fourth Amendment False Arrest and Malicious Prosecution Under 42 U.S.C. § 1983 Against All Defendants

68. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

69. Defendants, acting under color of state law, deprived Plaintiff of his Fourth Amendment rights by initiating and continuing criminal prosecutions without probable cause.

70. The first prosecution for aggravated harassment lacked probable cause because the alleged voicemail admittedly contained legitimate communicative purposes, directly contradicting the statutory requirement of "no purpose of legitimate communication."

71. The second prosecution for criminal contempt lacked probable cause because the Facebook post did not violate the protective order's prohibition on direct communication with Puccioni.

72. Both prosecutions resulted in Plaintiff's arrest, detention, public accusation of criminal conduct, and the necessity to defend against baseless charges.

73. The favorable termination of both prosecutions by dismissal establishes the lack of probable cause and supports Plaintiff's malicious prosecution claims.

- 12 -

74.     As a direct and proximate result of these constitutional violations, Plaintiff suffered physical detention, emotional distress, reputational harm, legal expenses, loss of employment, and other damages.

## FOURTH CAUSE OF ACTION

### Municipal Liability
### Under 42 U.S.C. § 1983
### Against Town of Niskayuna

75.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

76.     The Town of Niskayuna is liable under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978), through the "final policymaker" theory.

77.     Town Supervisor Puccioni was a final policymaker for the Town with authority over municipal operations, and she personally initiated the felony prosecution as the sworn complainant.

78.     Police Chief Kochan was a final policymaker for law enforcement operations, and he personally signed the accusatory instrument and directed the prosecution.

79.     The constitutional violations alleged herein were directly caused by the deliberate actions of these final policymakers.

80.     Alternatively, the Town had an unofficial custom or practice of retaliating against citizens who criticized town officials, as evidenced by the coordinated response to Plaintiff's protected speech activities.

## DEMAND FOR JURY TRIAL

81.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action on all issues so triable.

## PRAYER FOR RELIEF

Plaintiff prays for relief and demand judgment as follows:

1.    That Plaintiff be awarded compensatory damages against all Defendants in an amount to be determined at trial;

2.    That Plaintiff be awarded punitive damages against all Defendants in an amount to be determined at trial;

3.    That this Court, pursuant to 42 U.S.C. § 1988 and other applicable law, issue an order awarding Plaintiffs reasonable attorneys' fees, together with the costs of this action against all Defendants;

4.    Require Defendants to expunge any disciplinary record related to Plaintiff's protected speech; and

5.    That this Court award such other further relief, together with any other legal or equitable relief, or both, as the Court deems just and proper.

Dated:    June 12, 2025
          Buffalo, New York

**RUPP PFALZGRAF** LLC
*Attorneys for Plaintiff*

By:___s/R. Anthony Rupp III_____
          R. Anthony Rupp III, Esq.
424 Main Street, 1600 Liberty Building
Buffalo, New York 14202
(716) 854-3400
Rupp@RuppPfalzgraf.com

- 14 -